IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STACEY L. R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 21-cv-00567-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Stacey L. R. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

I.   **Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id*. § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[1] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[2] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation for Title XVI.)

[2] *See generally* 20 C.F.R. § 416.960 for Title XVI.

2

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits on August 1, 2014, with protective filing dates in June 2014. (R. 296, 615-28.) In her applications, Plaintiff alleged she has been unable to work since July 17, 2013, due to conditions including severe hip and knee pain on her left side, severe back and sciatica nerve pain, pain in her left arm and shoulder, stomach issues and gastric vomiting, a bleeding ulcer, and an infection in her intestines. (R. 615, 622, 708.) Plaintiff was 47 years old at the time of the decision now on appeal. (R. 44, 615.) She has at least a high school education and past relevant work as a childcare worker and preschool director. (R. 197, 709.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 346-50, 354-58.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on March 22, 2016. (R. 55-90, 360-61.) Without a decision being issued, a second and third hearing were conducted in Oklahoma[3] on January 13, 2017, and July 10, 2017. (R. 91-118.) Thereafter, the ALJ denied benefits and

---

[3] Plaintiff moved from California to Oklahoma after her initial, March 2016 hearing. (R. 98-99.)

found Plaintiff not disabled. (R. 296-304.) The Appeals Council, however, remanded the case to the ALJ for him to resolve certain additional issues. (R. 312-16.) The ALJ held another set of hearings on December 21, 2018, and May 6, 2019[4] (R. 119-59), before issuing a second decision denying benefits (R. 320-32). Again, the Appeals Council remanded the case for reconsideration. (R. 341-44.) The most recent hearing was held before a new ALJ on February 2, 2021. (R. 160-214.) The ALJ again denied benefits and found Plaintiff not disabled. (R. 16-44.) The Appeals Council denied review on October 27, 2021 (R. 1-6), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[5] Plaintiff appeals.

### III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2018. (R. 22.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 17, 2013. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) obesity; (2) gastro-esophageal reflux disease ("GERD"); (3) left carpal tunnel syndrome; (4) lumbar degenerative disc disease; (5) osteoarthritis; (6) migraine headaches; (7) Raynaud's syndrome; and (8) a hiatal hernia. (R. 22-28.) The ALJ determined that Plaintiff had other medically determinable impairments—including cyclical vomiting syndrome—that were not severe. (R. 23-24.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 28-31.)

The ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" with additional physical and

---

[4] Plaintiff requested the first hearing be discontinued so that she could retain counsel. (R. 123-24.)

[5] *See* 20 C.F.R. § 416.1481 for Title XVI.

4

environmental limitations.[6] (R. 31.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 31-41.) At step four, the ALJ found Plaintiff capable of performing her past relevant work as a preschool director. (R. 41-42.) Based on the testimony of a vocational expert ("VE"), the ALJ also found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as inspector, assembler, and surveillance monitor. (R. 42-44.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 44.)

## IV. Issues

On appeal, Plaintiff asserts the ALJ erred by: (1) denying Plaintiff administrative due process (ECF No. 15 at 8-11); (2) failing to support her RFC findings with substantial evidence (*id.* at 11-13); (3) declining to follow the Appeals Council's order on remand (*id.* at 12); and (4) failing to develop the record and the VE's testimony at the hearing (*id.* at 13-15). The undersigned disagrees and finds no error.

## V. Analysis

### A. Due Process.

Plaintiff first claims the ALJ's actions denied her administrative due process. Specifically, Plaintiff argues the ALJ infringed on her due process rights by setting a 60-minute time limit for the hearing without prior notice, requiring briefs be submitted if more time was needed, monopolizing the hearing with "non-important questions," restricting cross-examination of the VE, objecting to questions, refusing to allow summary arguments at the conclusion of the hearing, and generally making the hearing

---

[6] Plaintiff does not challenge the ALJ's assessment of her mental limitations. (*See generally* ECF No. 15.)

5

adversarial. (*Id.* at 8-9.) After reviewing Plaintiff's arguments and the relevant law, the undersigned finds Plaintiff's due process rights were not violated.

### 1. The Administrative Hearing

On February 2, 2021, the ALJ held a telephonic hearing with Plaintiff, Plaintiff's counsel, and the VE. (R. 160.) As the hearing began, the ALJ thanked the claimant for agreeing to hold the hearing on that Tuesday instead of Thursday when it was originally scheduled, after the ALJ's "scheduling had a little bit of a glitch . . . ." (R. 162.) Plaintiff's counsel then began interrupting the ALJ and demanding she answer his questions regarding the glitch (which the ALJ declined to do because it apparently involved another claimant). (R. 162-64.) At this time, the ALJ informed the participants that she had allotted one hour for the current hearing.[7] (R. 163-64.) The ALJ indicated that if the one hour was "insufficient to fully address the issues" and if Plaintiff believed "that additional time is warranted," she could file a post-hearing "brief in support of the need for a supplemental hearing." (R. 164-65.)

The hearing then proceeded, with both the ALJ and counsel questioning Plaintiff.[8] (R. 170-196.) After Plaintiff answered all the questions her counsel had (R. 196), the ALJ questioned the VE about Plaintiff's past relevant work and posed a number of hypotheticals to determine whether she could perform that past work or other work in the national economy (R. 196-206). Plaintiff's counsel was then given the opportunity to

---

[7] On appeal, Plaintiff states this was the "first time" the ALJ had advised her or her counsel of the time limit. (ECF No. 15 at 8.) But the hearing transcript indicates Plaintiff's counsel was well aware there was at least some sort of time limit and had corresponded with the ALJ's office about it. (R. 164 ("ALJ: . . . I would like to clarify with you, Mr. McTighe, that I schedule hearings for either 45 or 60 minutes. And your letters keep indicating that I am scheduling 30-minute hearing[s], which I do not do.").)

[8] On appeal, Plaintiff's counsel does not argue that he was precluded from exploring any topic with Plaintiff on direct examination. (*See generally* ECF No. 15.)

6

cross-examine the VE.[9]  (R. 208.)  During counsel's cross-examination, the ALJ repeatedly reminded counsel that he was required to pose questions to the VE in the form of hypotheticals using "vocationally defined" terms.  (R. 209-11.)  When asked for specificity in his hypotheticals—including how long Plaintiff would be away from her workstation due to vomiting—the hearing continued to devolve, with Plaintiff's counsel repeatedly talking over the witness and the ALJ (or vice versa).  (*Id.*)

> VE: So it would be outside of normal breaks she's going to be away from the workstation several times.  Can you tell me for how long?
> ATTY: As long as it takes her to vomit.
> ALJ: She's not going to be able to answer that.  So you have to be more specific.
> VE: -- me longer to vomit, than it would take you.  So if you could kind of give me a --
> ATTY: Well, we're just playing games now, right now.  I mean, you all heard about this --
> ALJ: Okay, [counsel], we're going to be respectful.  This is what's --
> ATTY: I am.
> ALJ: -- required in hearings.
> ATTY: No, I've done --
> ALJ: Okay, and we're overtime.
> ATTY: I've done many hearings and sometimes games are played.
> ALJ: Okay, we're not going to discuss other judges.  I'm in charge of this hearing.  We're overtime.  I've given you extra time.  If you -- and so you can give her multiple where you --
> CLMT: Can I say something now?
> ALJ: Sure.  No, ma'am.  Hold on.  Just a second.
> CLMT: Okay.
> ALJ: You're welcome to give her several hypotheticals where you say she'd be gone vomiting for five minutes, 10 minutes, whatever.  I just need you to give an estimate.
> ATTY: I can't --
> ALJ: And if you can't do that then we need to --
> ATTY: -- make stuff up.

---

[9] Prior to his examination of the VE, counsel engaged in argument before the ALJ regarding the Appeals Council's order on remand and Plaintiff's vomiting. (R. 206-08.) During this discussion, the ALJ indicated the one-hour time limit she had set on the hearing had passed. (R. 207.) The ALJ stated, however, that she would give Plaintiff's counsel an additional five minutes to examine the VE. (*Id.*) Plaintiff's counsel instead demanded the ALJ tell him how Plaintiff's stomach problems were incorporated in the ALJ's hypotheticals and asked the ALJ to preview whether she was going to find Plaintiff's stomach problems to be severe impairments. (R. 207-08.)

7

| | |
|---|---|
| ALJ: | -- end the -- |
| ATTY: | I'll make something up and then you'll chop it down.  I'm not going to make stuff up. |
| ALJ: | [Counsel], I don't think -- |
| ATTY: | I don't -- how long it takes -- |
| ALJ: | I don't appreciate you maligning my character.  I am very -- |
| ATTY: | I'm not maligning anybody's character, but I can't make up something. |
| ALJ: | Okay, just a -- |
| ATTY: | The claimant -- |
| ALJ: | It sounds like we're done with the hearing. |
| ATTY: | The claimant testified. |
| ALJ: | Okay. |
| ATTY: | I'm trying to finish.  The claimant testified -- |
| ALJ: | No, we're done. |
| ATTY: | -- to -- |
| ALJ: | We're done.  I gave you ample opportunity and we're going to be done now. |

(R. 210-12.)  The hearing then ended at 10:41 a.m., one hour and 18 minutes after it started.  (R. 162, 214.)  Post-hearing, Plaintiff objected to the one-hour time limit and requested a supplemental hearing to complete cross-examination of the VE.  (R. 608-10.)  The ALJ denied Plaintiff's request.  (R. 17.)

### 2.      Administrative Due Process and Agency Guidelines

On appeal, Plaintiff argues the ALJ's hearing actions denied her administrative due process, citing provisions of the Program Operations Manual System ("POMS") and the Hearings, Appeals, and Litigation Law Manual ("HALLEX"), which are the Administration's internal procedure manuals.[10]  (ECF No. 15 at 9-11.)  None of these provisions, however, were violated, and Plaintiff has not shown any prejudice.

---

[10] "HALLEX conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council staff."  HALLEX I-1-0-1, https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html (last visited Aug. 4, 2023).  POMS "is a primary source of information used by Social Security employees to process claims for Social Security benefits."  POMS Home, https://secure.ssa.gov/apps10/ (last visited Aug. 10, 2023).

8

As a preliminary matter, there is no need for Plaintiff to rely on POMS for the proposition that Social Security proceedings or hearings are subject to due process considerations.[11] Tenth Circuit caselaw supports this contention. *See Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir.2005) ("Social security hearings are subject to procedural due process considerations). "A due process claim will not succeed, however, if the claimant fails to show prejudice." *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014). Prejudice generally requires some fundamentally unfair element, the absence of which would have likely resulted in a different outcome. *See id.* at 573-74 (finding no due-process violation because claimant did not show a likelihood of a different result).

The same can be said of any alleged HALLEX violation. As the internal manual is not a regulation, it generally does not have legal force. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam) (citing the SSA claims manual). Still, it is an open question in the Tenth Circuit whether courts should require the Administration to follow the internal procedures set forth in HALLEX. *See Jimenez v. Astrue*, No. CIV 08-0817 KBM, 2009 WL 10708193, at *7 (D.N.M. May 14, 2009) ("the Supreme Court, Tenth Circuit, and this District have not decided whether HALLEX provisions are binding on federal courts or whether a violation of HALLEX constitutes a violation of procedural due process"). Even so, the Tenth Circuit has addressed claims of HALLEX violations by assuming, without deciding, that it can grant relief for "prejudicial violations," and then determining whether, in the case before it, such prejudice occurred. *Butterick v. Astrue*,

---

[11] Plaintiff cites POMS DI 40515.001(A), which relates to an individual's interest in "continuing" to receive" benefits; POMS DI 40515.001(B), which relates to a right to due process before taking "any adverse action" affecting benefits; and POMS DI 40515.005(A) which lists what will be provided before an "adverse action that affects continued receipt" of benefits. (ECF No. 15 at 9-10.) As Plaintiff is not a current benefit recipient, it is not clear whether these provisions would apply to her.

430 F. App'x 665, 668 (10th Cir. 2011) (unpublished).[12]  The Court will follow the same approach in this case.

### 3. HALLEX Violation and Resulting Prejudice

Plaintiff relies on HALLEX I-2-6-76 for the proposition that the ALJ's hearing actions—specifically, her one-hour time limit—violated Plaintiff's due process rights. (ECF No. 15 at 10.)  HALLEX I-2-6-76 reads

> During a hearing, an ALJ will provide the claimant and appointed representative, if any, reasonable time to present oral argument.  Absent special circumstances, the ALJ will not fix a time limit on oral argument prior to the presentation of arguments.  The ALJ will ensure all oral arguments are recorded and made a part of the record.
>
> After all hearing testimony has been presented, the ALJ will:
>
> - Offer the claimant and appointed representative, if any, the opportunity to make a final oral argument at the hearing; and
>
> - If necessary, address assertions made during final oral argument by the claimant or appointed representative, if any, if the argument varies sharply with the evidence of record or if the argument raises new and relevant issues.

HALLEX I-2-6-76, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-76.html (last visited Aug. 10, 2023).  Plaintiff's counsel argues that, because the hearing was terminated during his cross-examination of the VE, he necessarily was not offered "the opportunity to make a final oral argument." (ECF No. 15 at 10-11.)  Yet Plaintiff was given an opportunity after the hearing to submit a brief as to why additional hearing time was needed—and Plaintiff presented such a brief. (R. 608-10.)  In this filing, Plaintiff's counsel did not argue that he needed any additional time for oral argument or even hint that any of his arguments went unheard. (*Id.*)  Instead, Plaintiff requested a supplemental

---

[12] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

hearing "to complete cross-examination of the vocational expert witness." (R. 608.) As such, Plaintiff has shown no prejudice from her counsel's inability to offer additional oral argument.

As for cross-examination, per HALLEX, the ALJ had broad authority to control the manner in which cross-examination was conducted. *See* HALLEX I-2-6-74(C), https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-74.html (last visited Aug. 10, 2023). Under these provisions, counsel has the right "to question the VE fully on any pertinent matter within the VE's area of expertise." *Id.* However, the ALJ determines when this right is exercised and "whether questions asked or answers given are appropriate," *id.*, which is exactly what happened here. For instance, Plaintiff's counsel attempted to have the VE draw her own conclusions regarding Plaintiff's testimony about her "stomach problems" and their effects. (R. 208-09.) The ALJ cut off this line of questioning and told counsel that the VE could not answer questions relating to medical matters or involving the claimant's credibility. *See* HALLEX I-2-6-74(C) ("The ALJ will not permit the VE to respond to questions on medical matters or to draw conclusions not within the VE's area of expertise. For example, the VE may not provide testimony regarding claimant's residual functioning capacity or the resolution of ultimate issues of fact or law."). Further, the ALJ instructed Plaintiff's counsel to state his questions in the form of a hypothetical containing specific limitations, which he also failed to do, asserting that he either would not do so—as he thought the ALJ would just "chop [his hypotheticals] down" (R. 212)—or that he could not do so—as he would have to "make stuff up" (R. 211).

Often, limitations on cross-examination do not rise to the level of due process violations. *See Galdean v. Barnhart*, 46 F. App'x 920, 923 (10th Cir. 2002) (unpublished) (noting that because "the role of cross-examination in disability proceedings" is limited and "the conduct of the hearing rests generally in the examiner's discretion," limitations

in cross-examination questions did not violate due process rights); *see also Hope v. Colvin*, No. 12-CV-03017-RBJ, 2014 WL 235859, at *5 n.5 (D. Colo. Jan. 22, 2014) (finding no due process violation when the claimant was given the opportunity to question the VE, "albeit under time constraints," and counsel stated she had nothing further to ask). This case is no exception. The ALJ properly attempted to control the topics of cross-examination and even provided advice to counsel on how he might phrase a proper hypothetical. There was no violation of any HALLEX provisions or of Plaintiff's due process rights.

Still, even if a violation of HALLEX were shown, Plaintiff made no attempt to argue that any of the alleged procedural violations were prejudicial—*i.e.*, that they rendered the hearing fundamentally unfair or likely changed the outcome. Not once does Plaintiff argue that the alleged errors—from the hearing time limit to the restriction on counsel's cross-examination to the denial of Plaintiff's supplemental hearing requests[13]—changed the outcome of the case. This is particularly true given the Court's finding below that the RFC was supported by substantial evidence. The VE was asked what jobs Plaintiff could perform under that RFC. (*Compare* R. 31 *with* R. 199-202.) Any other questions to the VE on hypotheticals that contained additional or different limitations would be futile.

### B.   RFC & Appeals Council Order.

Next, Plaintiff argues the RFC is unsupported by substantial evidence because the ALJ failed to properly consider Plaintiff's gastrointestinal and vomiting complaints. (ECF

---

[13] The fact that Plaintiff was denied a request for a supplemental hearing does not necessarily establish prejudice under due process. *See Chase D. C v. Kijakazi*, No. 20-CV-1292 (ADM/TNL), 2022 WL 479357, at *8 (D. Minn. Jan. 31, 2022) ("The ALJ also considered counsel's request for a supplemental hearing—twice. The fact that this request was ultimately denied does not, however, establish that Plaintiff was prejudiced or treated unfairly by the ALJ." (citations omitted)).

12

No. 15 at 11-13.) Specifically, Plaintiff argues that in declining to properly consider Plaintiff's vomiting, the ALJ violated the Tenth Circuit's directive to discuss the uncontroverted evidence she chooses not to rely on and the significant evidence she rejects. (*Id.* at 11 (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).) Plaintiff also contends the errors in the RFC evaluation resulted in a failure to comply with the Appeals Council's order. (*Id.* at 12.) The undersigned disagrees with both contentions.

### 1. Substantial Evidence Supports the RFC

In order to proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC. That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1).[14] The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id.* § 404.1520(e).

In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a).[15]

---

[14] *See generally* 20 C.F.R. § 416.945 for Title XVI.

[15] *See generally* 20 C.F.R. § 416.913 for Title XVI.

13

In arriving at Plaintiff's RFC, the ALJ discussed Plaintiff's testimony; the longitudinal medical record; and the findings of her treating, consultative, and reviewing physicians.[16] (R. 31-41.) The only specific error Plaintiff alleges in the ALJ's RFC evaluation is her claim that the "ALJ's finding regarding Plaintiff being able to sit for 6 hours out [of] an 8 hour work day (sedentary) does not match up with the medical evidence" due to Plaintiff's "many documented medical interventions because of her severe abdominal pain, GERD and vomiting." (ECF No. 15 at 12.) However, because the ALJ adequately considered Plaintiff's abdominal pain (*see, e.g.*, R. 33 (noting Plaintiff's hospitalization for abdominal pain)), GERD diagnosis (*see, e.g.*, R. 37 (noting Plaintiff's GERD was severe but improving in April 2019)), and vomiting (*see, e.g.*, *id.* (noting Plaintiff had intractable vomiting in February 2019)) throughout the record, the undersigned finds no error in the analysis. (*See also* R. 24 (noting that the RFC incorporated specific environmental limitations to account for Plaintiff's GERD).) Considering that the ALJ clearly discussed these limitations—and did not ignore them in contravention of *Clifton*—Plaintiff's complaint merely amounts to a request for the undersigned to reweigh the evidence. As this is beyond the Court's authority, it declines to do so.

---

[16] As part of her discussion of the opinion evidence, the ALJ gave Dr. Ka Wai Tam's consultative examination significant, but not great, weight (R. 37-39 (noting that the ALJ was ultimately limiting Plaintiff to sedentary—rather than light—work and that Dr. Tam's findings contained some internal inconsistencies)). The ALJ also considered the opinion of a non-examining medical expert, Dr. Gregory Goings, and non-examining state agency physicians, whose opinions she gave little-to-partial weight. (R. 39-41.) Finally, the ALJ considered the opinion of one of Plaintiff's treating physicians, to which she gave some weight. (R. 41.)

### 2. The ALJ Complied with the Appeals Council Order

Intertwined with her argument regarding the RFC analysis, Plaintiff also claims that the ALJ "overruled" the Appeals Council's instructions regarding Plaintiff's chronic/cyclical vomiting syndrome and "refused to do what the Appeals Council Ordered." (ECF No. 15 at 12-13.)

In cases remanded by the Appeals Council, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).[17]

> When the Appeals Council remands a case with instructions, those instructions become legal requirements with which the ALJ is bound to comply. If the Appeals Council directs the ALJ to take additional or different steps to build or evaluate the record, then the remand order supplements or affirms the rules shaping the evidence that is available or pertinent to the claimant.

*Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1179-80 (10th Cir. 2020). Still, a court's usual standards of review apply to "allegations that an ALJ failed to comply with an Appeals Council remand order." *Id.* at 1178 (the question on review remains whether the "decision applies the correct legal standard and is supported by substantial evidence").

Here, the Order of Appeals Council read,

> [T]he Appeals Council vacates the [prior] hearing decision and remands this case to an [ALJ] for resolution of the following issues:
>
> - The decision found the claimant has severe impairments . . . . The decision considered nonsevere a history of a hiatal hernia (gastroesophageal reflex disease (GERD)). The claimant has been diagnosed with several[18] gastrointestinal impairments including GERD, chronic vomiting and cyclical vomiting syndrome . . . . The claimant testifies she vomits 3-4 times a day. The decision does not

---

[17] *See generally* 20 C.F.R. § 416.1477 for Title XVI.

[18] In her briefing, Plaintiff misquotes the Appeals Council as finding the "claimant has been diagnosed with <u>severe</u> gastrointestinal impairments, including GERD, chronic vomiting and cyclical vomiting syndrome . . . ." (ECF No. 15 at 12 (emphasis added).

> fully evaluate these impairments and explain why they are not severe.
>
> Upon remand the Administrative Law Judge will:
>
> - Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record . . . . [and]
>
> - Further identify and evaluate specific severe and nonsevere impairments . . . .

(R. 343-44 (citations omitted).) Plaintiff only complains that the ALJ violated the second directive and argues—without basis—that the Appeals Council ordered the ALJ "to consider chronic vomiting and cyclical vomiting syndrome as severe impairments." (ECF No. 15 at 12.)

The Court finds no error here. In her decision, the ALJ appeared acutely aware of these instructions and thoroughly explained her findings as to Plaintiff's chronic/cyclical vomiting. (*See* R. 23-24.) As directed, the ALJ identified and evaluated specific severe and non-severe impairments—determining GERD to be a severe impairment, vomiting generally to be a symptom rather than an impairment, and cyclical vomiting to be a non-severe impairment. (R. 22-24.)

In fact, the ALJ not only discussed Plaintiff's testimony regarding her vomiting (R. 32) and the medical documentation of her vomiting throughout the record (R. 32-37), but also spent two pages specifically outlining why Plaintiff's chronic vomiting was a medically determinable, but not <u>severe</u>, impairment (R. 23-24). The ALJ noted that while cyclical vomiting syndrome had been diagnosed (*see* R. 23-24), Plaintiff's physician recommended she not use marijuana "as this may worsen the frequency of vomiting" and "very well may have [caused] cannabis hyperemesis in the past when she was a regular user" (R. 35 (citing R. 1711); *see also* R. 23). The ALJ correctly noted that the medical

record continued to document marijuana use well after this 2017 notation.[19] (R. 23, 1753, 1812, 1866, 1901.) Moreover, the ALJ noted that physicians found Plaintiff's food allergies and nasal symptoms could have also attributed to her vomiting. (R. 23.) As such, the ALJ sufficiently "identified" and "evaluated" chronic/cyclical vomiting syndrome as a medically determinable impairment but discounted its severity due to the presence of other causes. Because the ALJ also continued to analyze Plaintiff's vomiting throughout the RFC evaluation and step four, the undersigned cannot say that she "failed to consider" this impairment. There was no error.

### C. The ALJ Adequately Developed the Record.

Finally, Plaintiff argues that two ALJ actions resulted in an insufficiently developed record: (1) positing a hypothetical to the VE that failed to incorporate all of Plaintiff's impairments; and (2) cutting off the cross-examination of Plaintiff's counsel. (ECF No. 15 at 13-15.) Neither of these arguments are persuasive.

The Court has found no error in the RFC, and the ALJ's hypothetical to the VE was consistent with that RFC (*compare* R. 31 *with* R. 199-202).[20] As such, Plaintiff's first argument fails. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (where the ALJ "propounded a hypothetical question to the VE that included all the limitations the ALJ

---

[19] A relevant part of the ALJ's consideration of the severity of a claimant's alleged symptoms include whether the claimant followed prescribed and recommended treatment. *See* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

[20] The only limitation in the RFC not specifically referenced in the hypothetical to the VE was occasional "pushing" with the dominant left upper extremity. (*Compare* R. 31 ("Occasional pushing and pulling with the dominant left upper extremity") with R. 199 ("Occasionally pull with the dominant left upper extremity.")). Plaintiff, however, makes no arguments regarding her ability to push or its effects on her prior relevant work or other jobs available under the VE's testimony.

ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision"); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (step-five hypotheticals "must include all (and only) those impairments borne out by the evidentiary record").

Plaintiff's second argument fails for a similar reason. Plaintiff did not seek to question the VE about the opinions offered on the pertinent hypothetical (i.e., about the jobs available to Plaintiff). Instead, Plaintiff's counsel attempted to cross-examine the VE about limitations not present in the RFC. Any such information would be irrelevant where, as here, the RFC was supported by substantial evidence.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 14th day of August, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT